IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL L. MARASIGAN,<br><br>　　　　　Defendant. | CRIMINAL CASE NO. 23-00014-001<br><br>**ORDER**<br>Denying Motion to Modify Release Conditions[,] for Authorization to Travel Off-Island [and] for Temporary Release of Passports<br>(ECF No. 63) |

Pending before the court is the Defendant's Motion to Modify Release Conditions[,] for Authorization to Travel Off-Island [and] for Temporary Release of Passports (the "Motion for Authorization to Travel"), which seeks permission for the Defendant to travel to the Philippines from July 13-27, 2023. *See* ECF No. 63. The United States opposes the motion. *See* USA's Obj., ECF No. 66. The court gave the parties and the pretrial services officer an opportunity to present their respective positions on the requested travel. *See* Minutes, ECF No. 68. Having heard from the parties and based on the relevant information presently before the court, the court denies the Motion for Authorization to Travel.

**I.　BACKGROUND**

On May 10, 2023, an Indictment was filed charging the Defendant and six others with Conspiracy to Operate Illegal Gambling Business. *See* ECF No. 1. Additionally, the Defendant was charged with one count of Money Laundering and 62 counts of Money Laundering Conspiracy. *Id.* The offenses are Class C and D felonies. According to the Indictment, the defendants and others "operated an illegal gambling business using the name of [Guam Shrine Club ("GSC")] and its Hafa Adai Bingo's nonprofit status and bingo permits, so it would appear to the public and law

enforcement agencies that Hafa Adai Bingo's fundraising activities were being conducted in compliance with Guam gambling laws. *Id.* at ¶15. The Indictment asserts that "[i]t was the object of the conspiracy for the defendant to unjustly enrich themselves and others by operating an illegal gambling business [in violation of Guam law] under the guise of charitable and civic fundraising," *Id.* at ¶14. The Indictment alleges that "bingo proceeds in excess of $34,000,000 were deposited into various GSC bank and credit union accounts," and that the "Defendant and Ideal Ventures, LLC[, owned and operated by the Defendant,] received over $15,000,000 of [the] bingo proceeds." *Id.* at ¶¶4, 19 and 25. The Defendant is accused of then depositing over $2.3 million of the bingo proceeds he received into the personal accounts of the codefendants. *Id.* at ¶¶27-29.

At the request of the United States, the court issued a warrant for the Defendant's arrest. On June 13, 2023, the Defendant was arrested by the marshals. *See* Warrant Return, ECF No. 31.

The Defendant made his initial appearance before the court on June 14, 2023, and pleaded not guilty to all the charges against him. *See* Minutes, ECF No. 33. Trial was then set to commence on August 22, 2023. *See* Trial Scheduling Order, ECF No. 35.[1] The court ordered the Defendant released and imposed release conditions, including that he surrender his United States and Philippines passports to the U.S. Probation Office and that he not leave Guam without the permission of the court.[2] *See* Order Setting Conditions of Release at ¶7(d) and (f), ECF No. 34.

On June 30, 2023, the Defendant filed the instant Motion for Authorization to Travel. *See* ECF No. 63. According to the motion and supporting declaration, the Defendant desired to visit his family in the Philippines, including his sickly 80-year old father. Decl. Michael L. Marasigan at ¶¶4 and 6. The Defendant claimed he assists in operating his father's farming business and "personally purchase[s]" his father's medication and insulin on a monthly basis. *Id.* at ¶¶4-5.

---

[1] Following the arraignment of codefendant Alfredo D. Leon Guerrero – the last to make his appearance before the court – the trial was moved to August 29, 2023. *See* Am. Trial Scheduling Order, ECF No. 51.

[2] Defense counsel requested that the Defendant's release conditions include the ability to travel "every now and then" to the Philippines, where the Defendant has family, but the court stated that any off-island travel would be determined on a case-by-case basis.

On June 30, 2023, the United States filed an Objection to the Defendant's motion, arguing that other family members in the Philippines can obtain the medication for the Defendant's father and that the Defendant failed to give any details about the type of assistance he personally provides for his father's business. *See* USA Obj. at ¶¶3 and 5, ECF No. 66.

On July 7, 2023, the court heard argument on the Motion for Authorization to Travel and took the matter under advisement. *See* Minutes, ECF No. 68.

## II. LEGAL STANDARD

The court has the authority to amend pretrial release conditions imposed on a defendant. *See* 18 U.S.C. § 3142(c)(3) ("The judicial officer may at any time amend the [release] order to impose additional or different conditions of release."). The court is guided by the factors set forth in 18 U.S.C. § 3142(g) when initially setting or modifying pretrial release conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community. These statutory factors are (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his family ties, financial resources, community ties and past conduct; and (4) the nature and seriousness of the danger to any person or community that would be posed by the person's release. 18 U.S.C. § 3142(g). The court must also be mindful that the Bail Reform Act requires the court to impose the "least restrictive conditions or combination of conditions that will reasonably assure the defendant's appearance as required[.]" 18 U.S.C. § 3142(c)(1)(B).

## III. DISCUSSION

The Defendant maintains that he is not a flight risk nor a danger to the community and notes that he has no prior criminal history, the charges offenses are not violent in nature, and he has substantial ties to the community. Mot. Authorization Travel at 4, ECF No. 63. He also asserts that his appearance before this court is secured by the extradition treaty between the United States and the Philippines. *Id.*

The pretrial services officer had concerns about the Defendant's request travel. She reported that she met with the Defendant one week prior to the filing of the motion, at which time there was brief discussion about travel. The pretrial services officer stated the Defendant never mentioned to

her at any time that he had intentions of traveling to the Philippines, so the information contained in the Defendant's motion caught her by surprise. The pretrial services officer did not support the request to travel, stating that the Defendant just started his supervision period so it was too soon for her to determine that he would comply with imposed conditions or even return to Guam for trial.

The United States concurred with the pretrial services officer, stating it was unclear at this time why the Defendant needed to be in the Philippines to personally assist his family, particularly since he has other relatives there. The government argued was there was no guarantee he would return for trial set at the end of August, because the Defendant holds dual citizenship with the Philippines and the United States and he faced a lengthy sentence if convicted, including substantial fines and forfeiture. Counsel claimed the government's investigation revealed that significant funds flowed through the Defendant's accounts, some of which he retained and some of which he distributed to others.

Defense counsel countered that the Defendant will appear for his trial, just as he returned to Guam from the Philippines knowing that he was under indictment. Counsel asserted that the Defendant has always split his time between the Philippines and Guam and that the Defendant has about $300,000 equity in his Guam residence valued at about $600,000. Defense counsel reiterated that there is an extradition treaty between the Philippines and the United States.

Considering the Section 3142(g) factors, the court notes that the Defendant is not charged with crimes of violence but rather financial offenses that carry up to 20 years of imprisonment and significant fines. The government claims the weight of the evidence against the Defendant is strong, but this factor is the least important in the court's consideration. *See United States v. Winsor*, 785 F.2d 755, 757 (9th Cir.1986). With regard to the history and characteristics of the Defendant, the Pretrial Services Report indicates he has no prior criminal history and that the Defendant's parents and siblings all reside in the Philippines. The Defendant came to Guam in February 2006, and from 2006 to 2012, the Defendant claimed he was employed by his father's business as a manager, and thereafter worked as the manager of Ideal Ventures since 2017. The Defendant's ties to the community include his spouse, whom he married in 2019, his company and his home. The court does not believe the Defendant poses a danger to the community.

Nevertheless, the court shares the concerns of the pretrial services officer and the government. The Defendant's desire to travel to the Philippines is a "want" and not a "need." He does not need to be in the Philippines to personally purchase his father's medication. The Defendant can provide the funds for the medication while he remains on Guam, and his immediate family members in the Philippines can obtain and administer the medication as needed. Additionally, the Defendant did not provide the court with any specific information regarding the assistance he provides to his father's farming business, so the court can not conclude that his personal presence in the Philippines is critical to the operation of the business. Rather, with trial set to commence in about six weeks, it is necessary for the Defendant to remain on Guam to assist his counsel in preparing for trial. The fact that there is an extradition treaty between the United States and the Philippines gives little comfort to this court, particularly because extradition proceedings are often lengthy and protracted, and it would not be right to put the government through that exercise. The Defendant has not offered to post any security to reasonably assure his return, and the equity in his home pales in comparison to the $15 million in alleged ill-gotten gains. The Defendant faces multiple money laundering counts, which are serious offenses. The Defendant has only been on pretrial supervision for three weeks, which does not provide the court with a sufficient record to conclude that he would appear for trial if permitted to travel to a foreign country.

Based on the above factors, the court denies the request to modify the Defendant's pretrial release conditions to allow him to travel to the Philippines at this time. The Defendant's Motion for Authorization to Travel is denied without prejudice.[3]

IT IS SO ORDERED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Jul 12, 2023

---

[3] If the August 29, 2023 trial date is continued, the Defendant may renew his request to travel.