**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 23-00014 |
| Plaintiff, | |
| vs. | **ORDER RE CLOSING JURY INSTRUCTIONS, MOTIONS IN LIMINE, AND SUPPLEMENTAL BRIEFS** |
| MICHAEL L. MARASIGAN, JOSE ARTHUR D. CHAN, JR., and CHRISTINE C. CHAN, | |
| Defendants. | |

On March 14, 2025, the court ordered the parties to respond to the offense and affirmative defense closing jury instructions and address whether they object to any of the instructions. If so, the parties were ordered to state their specific objection accompanied by legal authority and their proposed revision(s). The defendants were also ordered to "specifically indicate which of the three affirmative defenses in Instruction No. 1C they intend to use." Order at 2, ECF No. 380. Finally, the parties were ordered to file their motions on March 15, 2025, at 11:00 a.m.

Defendant Christine C. Chan filed two motions in limine, a response to the jury instructions, a brief regarding the burdens of proving the affirmative defenses, and a request for judicial notice. *See* ECF Nos. 381-84, 389. Defendant Michael L. Marasigan filed a brief

regarding the charge of conspiracy to operate illegal gambling. *See* ECF No. 385. The Government filed a non-objection to the jury instructions and responses to Defendant Christine Chan's motions in limine. *See* ECF 386-88. Finally, Defendant Jose Arthur D. Chan filed a joinder in Defendant Christine Chan's first motion in limine (ECF No. 381), her response regarding jury instructions (ECF No. 383), and her briefing on the burden of production for an affirmative defense (ECF No. 384). *See* ECF No. 390.

First, the court denies Defendant Christine Chan's request to provide the jury with her proposed affirmative defense instruction and denies her proposal regarding the burden of production for the reasons previously stated on March 14, 2025, and in the court's subsequent order.[1] ECF Nos. 383 (citing ECF No. 368), 384; *see also* Order at 1-2, ECF No. 380. The court finds that the cases cited in Defendant Christine Chan's brief on the burden of production are inapplicable to the affirmative defenses here and instead address scenarios where a court failed to instruct the jury on an affirmative defense after a defendant put on substantial evidence of that affirmative defense. This does not conflict with the court's prior ruling that defendants must bear the burden of proving the affirmative defenses by a preponderance of the evidence. Similarly, the court will not provide the jury the affirmative defense instruction previously requested by Defendant Arthur Chan. ECF No. 373. If Defendants Christine Chan and Arthur Chan intend to assert the affirmative defenses in 9 Guam Code Ann. §§ 64.70(a), 64.70(g), then the court will provide the jury with the court's revised instruction below. *See* Instruction No. 1C.

Second, Defendant Marasigan's Brief Re: 18 U.S.C. §§ 371 and 1955(a) Elements is denied insofar as it requests a revision to the jury instructions provided by the court. ECF No. 385. Defendant Marasigan was ordered to provide a "specific objection accompanied by legal

---

[1] The court also notes Defendant Christine Chan's continued objection to the wire fraud instruction, which was joined by Defendant Arthur Chan. The court maintains its decision to provide the Ninth Circuit Model Jury Instruction instead of the instruction provided in *United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024).

authority and [his] proposed revision to the instruction." Order at 2, ECF No. 380. He did not do so.[2] Therefore, the court denies the arguments made in his brief. If Defendant Marasigan intends to assert the affirmative defenses in Instruction No. 1C, he shall indicate as such at the March 17, 2025 hearing.

Third, Defendant Christine Chan's Motion in Limine to Prevent Certain Government Theories and Evidence in Support of Such Theories from Reaching the Jury is granted in part and denied in part. ECF No. 381. It is undisputed that the defendants are not eligible to *individually* apply for or receive a permit to conduct gambling activities or to be a nonprofit organization. The court will not allow the Government to put on evidence or assert theories that the parties, as individuals, should have had permits to conduct gambling activities and the absence of a permit issued to a defendant individually renders the gambling activities criminally illegal. However, the Government may assert theories or put on evidence that is relevant for another purpose, such as an agreement to operate illegal gambling, or that the defendants became a member of a conspiracy to operate illegal gambling, or to rebut the defendants' affirmative defenses. Accordingly, the court grants in part and denies in part Defendant Christine Chan's motion in limine insofar as the evidence may be inadmissible for one purpose, but admissible for another. The court will still consider defendants' objections to specific evidence or theories during trial.

Fourth, Defendant Christine Chan's Motion to Enforce Judicial Admission and Motion in Limine is denied. Although the court recognizes the inconsistency between the Government's prior statements and those made at the March 14, 2025 hearing and in response to the motion, as

---

[2] All three defendants, most recently Defendant Marasigan, have argued that 9 GUAM CODE ANN. §§ 64.70(a), (g) provide "immunity" from prosecution. *E.g.*, Brief at 3, ECF No. 385. This is not true. These exceptions to the general prohibition against gambling in Guam are not specific provisions by the Guam Legislature to provide immunity. Rather, the subsections provide exceptions to criminal liability that are properly asserted as affirmative defenses. Had the Guam Legislature intended to provide immunity from suit under Chapter 64, it would have done so as it has done in other chapters. *E.g.*, 9 GUAM CODE ANN. §§ 7.113, 46.404. That is not the case here.

3

far as the court is aware, the defendants were provided in discovery or otherwise possessed copies of the permits. If the Government is correct that the permits issued by the Department of Revenue and Taxation did not cover all the years charged in the Superseding Indictment, which must be proven to rebut the defendants' affirmative defenses, the defendants cannot claim surprise or prejudice if the evidence has always shown as such.

Finally, Defendant Christine Chan's Request for Judicial Notice is denied. ECF No. 389. The court previously ruled that the Government shall redact the portions of the cooperating codefendants' plea agreements that refer to the permitting process in Section 64.70 to avoid any potential prejudice. *See* Minutes, ECF No. 374. The court does not find, however, that it is necessary to take judicial notice of "the fact that cooperating codefendants could not have known the correct elements of the crimes they pleaded guilty to when they pleaded guilty." *See* Request at 5, ECF No. 398. The cooperating codefendants were sufficiently apprised of the correct elements of the offenses of conviction. The cooperating codefendants did not plead guilty to a violation of Section 64.70(b). In Juanita Capulong's plea agreement, for example, the elements of the offenses that she pleaded guilty to are found in paragraph 4.[3] Plea Agreement at ¶ 4, ECF No. 209. The reference to Section 64.70 is found separately in paragraph 5.[4] *Id. at* ¶ 5. The statement that "[t]he failure to conduct the bingo operations in conformance with Section 64.70 rendered the conduct of such bingo games illegal" is not an incorrect statement of law. The court's prior ruling was based on the premise that this sentence, in the context of the preceding sentences, suggests that a failure to adhere to the permitting process was a criminal offense. Thus, the court ordered that the Government to redact such sentences. The court also explained that the Government is prohibited from arguing that a failure to adhere to the permit application

---

[3] This is also true for the other cooperating codefendants. *See* ECF Nos. 80, 87; *see also* ECF No. 30, Criminal Case No. 22-00010.

[4] Note that the reference is *not* specifically to Section 64.70(b) but rather a general citation to all of Section 64.70.

4

process was illegal, and that the court would provide a jury instruction on the use of a witness's plea agreement only to assess their credibility. *See* Minutes, ECF No. 374; *see also* Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction 3.9. The court finds this is sufficient to guard against the prejudice that Defendant Christine Chan described.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
    **Chief Judge**
**Dated: Mar 16, 2025**

**INSTRUCTION NO. 1A**
**CONSPIRACY TO OPERATE ILLEGAL GAMBLING BUSINESS**
**COUNT 1 – ELEMENTS[5]**

Defendants Michael L. Marasigan, Jose Arthur D. Chan, and Christine C. Chan are charged in Count 1 of the superseding indictment with conspiracy to operate illegal gambling business in violation of Sections 371 and 1955(a) of Title 18 of the United States Code. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about March 2015, and ending on or about December 31, 2021, there was an agreement between two or more persons to operate illegal gambling business as charged in the superseding indictment and defined in Instruction No. 1B;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after March 2015 for the purpose of carrying out the conspiracy.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped

---

[5] Government's Proposed Jury Instruction No. 14, ECF No. 222, with court revisions; *see also* Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction 11.1 (revised June 2024).

6

one another. You must find that there was a plan to commit at least one of the crimes alleged in the superseding indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts.

7

**INSTRUCTION NO. 1B**
**OPERATING ILLEGAL GAMBLING BUSINESS – DEFINED[6]**
**(18 U.S.C. § 1955)**

As identified in the first element of Instruction No. 1A, the object of the conspiracy is operating illegal gambling business in violation of Section 1955 of Title 18 of the United States Code. The elements of that crime are:

First, the defendant conducted, financed, managed, supervised, directed, or owned a business consisting of bingo games;

Second, that the bingo games are illegal gambling in Guam;

Third, the business involved five or more persons who conducted, financed, managed, supervised, directed, or owned all or part of the business; and

Fourth, the business had been in substantially continuous operation by five or more persons for more than thirty days and had a gross revenue of $2,000 in any single day.

As to the second element, gambling is illegal in Guam if a person (1) makes or accepts a wager involving money or anything of monetary value upon the result of any game or contest, or (2) holds any money or anything of monetary value which he knows has been wagered in violation of (1).

---

[6] Government's Proposed Jury Instruction No. 16, ECF No. 222, with court revisions; Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction 18.2 (revised June 2021). The second to last paragraph in this instruction is based on 9 GUAM CODE ANN. § 64.10(a)(1)-(2).

"Bingo games" means a specific game of chance, commonly known as "bingo," in which prizes are awarded on the basis of designated numbers or symbols on a card conforming two numbers or symbols selected at random.[7]

---

[7] 9 GUAM CODE ANN. § 64.70(f).

Case 1:23-cr-00014     Document 391     Filed 03/16/25     Page 9 of 28

## INSTRUCTION NO. 1C
## DEFENDANTS' AFFIRMATIVE DEFENSES

Even if you find a defendant guilty of conspiracy to operate illegal gambling business as instructed in Instruction No. 1A, you must find the defendant not guilty if the defendant proves by a preponderance of the evidence either or both of the following:

1. That the gambling activities were (a) sponsored, (b) promoted, and (c) conducted (d) by an organization which has been issued a permit by the Director of the Department of Revenue and Taxation to conduct such activities;[8] or

2. That the gambling activities were (a) conducted, (b) by a nonprofit tax-exempt organization (c) that had been issued a permit by the Director of the Department of Revenue and Taxation to conduct such activities, and (d) the activities took place on premises authorized by the Department of Revenue and Taxation, (e) where the use of such premises was not conditioned on the payment of a share of bingo proceeds.[9]

A preponderance of the evidence means that you must be persuaded that the things the defendant seeks to prove are more probably true than not true. This is a lesser burden of proof than the government's burden to prove beyond a reasonable doubt each element of conspiracy to operate illegal gambling.

If you unanimously find that the government has proven a defendant guilty of conspiracy to operate illegal gambling beyond a reasonable doubt, and you also unanimously find that the defendant has proven by a preponderance of the evidence one or both of the defenses provided in this instruction, you must select "not guilty by reason of [specify the defense]" for a defendant that meets this burden.

---

[8] 9 GUAM CODE ANN. § 64.70(a).

[9] 9 GUAM CODE ANN. § 64.70(g).

10

Stated differently, there are two defenses listed above. You, as the jury, must find the first unanimously, or the second unanimously; you may also find both defenses unanimously. Finding either or both of the defenses unanimously requires a verdict of not guilty in Count 1.

**INSTRUCTION NO. 1D**
**DEFINITION OF "SPONSOR"[10]**

The government has admitted that the Guam Shrine Club sponsored the bingo games.

---

[10] Defendant Christine C. Chan's proposed affirmative defense instruction, ECF No. 171.

**INSTRUCTION NO. 1E**
**DEFINITION OF "PROMOTE"[11]**

"Promote" means to take action drawing the public's attention to the bingo games.

---

[11] Defendant Christine C. Chan's proposed affirmative defense instruction, ECF No. 171.

**INSTRUCTION NO. 1F**
**DEFINITION OF "CONDUCT"[12]**

"Conduct" means to have a role in a gambling business no matter how small.

The Guam Shrine Club may have hired or contracted with persons or entities outside of the Guam Shrine Club to assist in the operation of bingo games. This in itself does not mean that the bingo games were not conducted by the Guam Shrine Club.

---

[12] Defendant Christine C. Chan's proposed affirmative defense instruction, ECF No. 171.

**INSTRUCTION NO. 1G**
**CONSPIRACY – KNOWLEDGE OF AND ASSOCIATION**
**WITH OTHER CONSPIRATORS[13]**

A conspiracy may continue for a long period of time and may include the performance of many transactions. It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

Even though a defendant did not directly conspire with other conspirators in the overall scheme, the defendant has, in effect, agreed to participate in the conspiracy if the government proves each of the following beyond a reasonable doubt:

First, the defendant directly conspired with one or more conspirators to carry out at least one of the objects of the conspiracy;

Second, the defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and

Third, the defendant had reason to believe that whatever benefits the defendant might get from the conspiracy were probably dependent upon the success of the entire venture.

It is not a defense that a person's participation in a conspiracy was minor or for a short period of time.

---

[13] Government's Proposed Jury Instruction No. 15, ECF No. 222; *see also* Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction 11.4 (revised April 2019).

15

**INSTRUCTION NO. 2A**
**MONEY LAUNDERING CONSPIRACY[14]**
**COUNT 3 – ELEMENTS**

Defendants Michael L. Marasigan, Jose Arthur D. Chan, and Christine C. Chan are charged in Count 2 to of the superseding indictment with money laundering conspiracy, in violation of Section 1956(h) of Title 18 of the United States Code. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about March 2015 and ending on or about December 31, 2021, there was an agreement to commit money laundering as charged in the superseding indictment and defined in Instruction No. 2B;

Second, the defendant knew the objective of the agreement; and

Third, the defendant joined the agreement with the intent to further its unlawful purpose.

---

[14] Government's Proposed Jury Instruction No. 20, ECF No. 222, with court revisions; *see also* Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction No. 18.7A.

**INSTRUCTION NO. 2B**
**LAUNDERING MONEY INSTRUMENTS – DEFINED[15]**
**(18 U.S.C. § 1956(a)(1)(B))**

As identified in the first element of Instruction No. 2A, the object of the conspiracy is to commit money laundering, in violation of Section 1956(a)(1)(B) of Title 18 of the United States Code. The elements of that crime are:

First, the defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of conspiracy to operate illegal gambling business or conspiracy to commit wire fraud;

Second, the defendant knew that the property represented the proceeds of some form of unlawful activity; and

Third, the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

A financial transaction is a transaction involving the movement of funds by wire or other means that affects interstate or foreign commerce in any way; or a transaction involving one or more monetary instruments that affects interstate or foreign commerce in any way; or a transaction involving the use of a financial institution that is engaged in, or the activities of which affects interstate or foreign commerce in any way.

The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a

---

[15] Government's Proposed Jury Instruction No. 21, ECF No. 222, with court revisions; *see also* Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction 18.4 (revised May 2023).

17

felony. I instruct you that conspiracy to operate illegal gambling business or conspiracy to commit wire fraud are felonies.

"Proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

**INSTRUCTION NO. 3A**
**MONEY LAUNDERING[16]**
**COUNTS 3-40 – ELEMENTS**
**(18 U.S.C. § 1957)**

Defendants Michael L. Marasigan and Christine C. Chan are charged in Counts 3-40 of the superseding indictment with money laundering in violation of Section 1957 of Title 18 of the United States Code. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from conspiracy to operate illegal gambling business; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means any bank or any credit union.

The term "criminally derived property" means any property constituting, or derived from, the proceeds obtained from a criminal offense. The government must prove that the defendant

---

[16] Government's Proposed Jury Instruction No. 22, ECF No. 222; *see also* Ninth Circuit Committee on Model Jury Instructions, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2022 ed.), Instruction 18.7 (revised Sept. 2022).

knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of conspiracy to operate illegal gambling business.

Although the government must prove that, of the property at issue, more than $10,000 was criminally derived, the government does not have to prove that all the property at issue was criminally derived.

**INSTRUCTION NO. 3B**
**MONEY LAUNDERING**[17]
**COUNTS 41-64 – ELEMENTS**
**(18 U.S.C. § 1957)**

Defendants Michael L. Marasigan and Christine C. Chan are charged in Counts 41-64 of the superseding indictment with money laundering in violation of Section 1957 of Title 18 of the United States Code. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from conspiracy to operate illegal gambling business or conspiracy to commit wire fraud; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means any bank or any credit union.

The term "criminally derived property" means any property constituting, or derived from, the proceeds obtained from a criminal offense. The government must prove that the defendant

---

[17] Government's Proposed Jury Instruction No. 23, ECF No. 222; *see also* Ninth Circuit Committee on Model Jury Instructions, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2022 ed.), Instruction 18.7 (revised Sept. 2022).

Case 1:23-cr-00014   Document 391   Filed 03/16/25   Page 21 of 28

knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of conspiracy to operate illegal gambling business or conspiracy to commit wire fraud.

Although the government must prove that, of the property at issue, more than $10,000 was criminally derived, the government does not have to prove that all the property at issue was criminally derived.

**INSTRUCTION NO. 3C**
**AIDING AND ABETTING[18]**
**(18 U.S.C. § 2(a))**

A defendant may be found guilty money laundering, as charged in Counts 3-40 and Counts 41-64 of the superseding indictment, even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To "aid and abet" means intentionally to help someone else commit a crime. To prove a defendant guilty of money laundering by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

First, someone else committed money laundering;

Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of money laundering conspiracy;

Third, the defendant acted with the intent to facilitate money laundering; and

Fourth, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit money laundering.

A defendant acts with the intent to facilitate the crime when the defendant actively

---

[18] Government's Proposed Jury Instruction No. 26, ECF No. 222. Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction 4.1 (revised Sept. 2019).

23

participates in a criminal venture with advance knowledge of the crime and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime.

The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

**INSTRUCTION NO. 4A**
**CONSPIRACY TO COMMIT WIRE FRAUD**
**COUNT 65 – ELEMENTS[19]**

Defendants Michael L. Marasigan, Jose Arthur D. Chan, and Christine C. Chan are charged in Count 65 of the superseding indictment with conspiracy to commit wire fraud in violation of Section 1343 and 1349 of Title 18 of the United States Code. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about March 2015, and ending on or about December 31, 2021, there was an agreement between two or more persons to commit wire fraud as charged in the superseding indictment and as identified in Instruction No. 4B; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the superseding indictment as an object of the conspiracy with all of you agreeing as to the

---

[19] Government's Proposed Jury Instruction No. 24, ECF No. 222, with court revisions. Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction No. 11.1 (revised June 2024).

Case 1:23-cr-00014    Document 391    Filed 03/16/25    Page 25 of 28

particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

# INSTRUCTION NO. 4B
## WIRE FRAUD – DEFINED[20]
### (18 U.S.C. § 1343)

As identified in the first element of Instruction No. 4A, the object of the conspiracy is to commit wire fraud, in violation of Section 1343 of Title 18 of the United States Code. The elements of that crime are:

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises. Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements but also the circumstances in which they are used as a whole.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

---

[20] Government's Proposed Instruction No. 25, ECF No. 222, with court revisions. Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2022 ed.), Instruction 15.35 (revised June 2024).

27

To convict a person of wire fraud, the false or fraudulent pretenses, representations, or promises must directly or indirectly deceive the victim about the nature of the bargain. A misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction. Whether a misrepresentation goes to the nature of the bargain may depend on the specific transaction at issue.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate or foreign in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate or foreign wire communication must have actually occurred in furtherance of the scheme.