**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 23-00014 |
| Plaintiff, | |
| | **DECISION AND ORDER DENYING DEFENDANT MICHAEL L. MARASIGAN'S MOTION TO DISQUALIFY (ECF NO. 449) AND MOTION TO RECUSE (ECF NO. 457)** |
| vs. | |
| MICHAEL L. MARASIGAN, JOSE ARTHUR D. CHAN, JR., and CHRISTINE C. CHAN, | |
| Defendants. | |

Before the court are Defendant Michael L. Marasigan's (1) Motion *In Limine* To Disqualify Judge Tydingco-Gatewood ("Motion to Disqualify") and (2) Motion Pursuant to 28 U.S.C. § 455 to Recuse Trial Judge ("Motion to Recuse"). *See* ECF Nos. 449, 457. The Motion to Disqualify is made under 28 U.S.C. §§ 144, 455; and the Motion to Recuse is made under 28 U.S.C. § 455. The motions were accompanied by two affidavits and a declaration, all of which were from one of Defendant Marasigan's counsels, Mr. David J. Lujan. *See* ECF Nos. 448, 452, 457-1.

The motions and supporting documents make serious allegations that the undersigned judge should be disqualified from presiding over this case because of impartiality and bias against Mr. David Lujan. For the reasons stated herein, the court hereby **DENIES** the motions.

**I. Background**

Defendants Michael L. Marasigan, Jose Arthur D. Chan, and Christine C. Chan (collectively, the "Defendants"), along with four other defendants who either pled guilty or passed away,[1] were indicted by a grand jury on May 10, 2023, on sixty-four counts, including offenses for Conspiracy to Operate Illegal Gambling Business, in violation of 18 U.S.C. §§ 371, 1955(a); Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(B)(i), 1957; and Money Laundering, in violation of 18 U.S.C. §§ 1957, 2. *See* Indictment, ECF No. 1. On October 2, 2024, the Government filed a superseding indictment against the Defendants, which added a sixty-fifth count for Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1349, 1343, and modified certain money laundering charges to include conspiracy to commit wire fraud as a specified unlawful activity. *See* Superseding Indictment, ECF No. 212.

Relevant here, Mr. Lujan entered his appearance to represent former co-defendant Richard C. Brown on June 15, 2023. *See* ECF No. 36. Mr. Brown passed away on April 28, 2024. Six months later, Mr. Lujan entered an appearance on behalf of Defendant Marasigan on October 29, 2024. *See* ECF No. 235; *see also* ECF Nos. 160-61. He joined Mr. Michael F. Phillips as co-counsel for Defendant Marasigan, who has represented the Defendant since the inception of this case, when the Defendant was arraigned on June 14, 2023. ECF No. 235; *see also* ECF Nos. 32,33.

Jury selection commenced on March 13, 2025, and trial began on March 18, 2025. *See* ECF Nos. 377, 403. Mr. Lujan's oral motion for recusal was made on April 3, 2025. *See* Am. Mins., ECF No. 454. After the court's denial of the oral motion, the instant motions were filed.

Defendant Marasigan, through counsel alleges in these motions that the undersigned has

---

[1] Defendants Alfredo D. Leon Guerrero, Juanita Capulong, and Minda C. San Nicolas were similarly indicted on May 10, 2023, but later pled guilty. *See* ECF Nos. 1, 77, 80, 82, 87-88, 204, 209, 232. Defendant Richard C. Brown was also indicted at this time, but he passed away and the court dismissed the charges against him on May 24, 2024. *See* ECF Nos. 160, 161.

personal bias and prejudice against Mr. Lujan. Specifically, Defendant Marasigan's counsels allege that the undersigned holds a personal bias against Mr. Lujan after the U.S. Court of Appeals for the Ninth Circuit overturned the undersigned's decision in *United States v. Crowe*, wherein Mr. Lujan was counsel for Mr. Crowe. Mot. to Disqualify at 2, ECF No. 449. Allegedly, the appellate court's decision resulted in the undersigned's non-reappointment[2] to the bench. *See* Mot. to Recuse at 3, ECF No. 457; Decl. at 2-3, ECF No. 457-1. Defendant Marasigan's counsels further allege that because of the undersigned's personal bias and prejudice against Mr. Lujan, it imposed a short deadline for the motion briefing and an unreasonable trial schedule. *See* Decl. at 3, ECF No. 457-1. Lastly, Defendant Marasigan's counsels allege that the undersigned is accusing Mr. Lujan of feigning illness. *See* Mot. to Disqualify at 2-3, ECF No. 449; Mot. to Recuse at 3-4, ECF No. 457; Decl. at 2-3, ECF No. 457-1.

The court recites the following facts as relevant to the proceedings addressed in Defendant Marasigan's motions and to contextualize the decision reached below.

### A. March 20, 2025

On March 20, 2025, the third day of trial, Defendant Marasigan's counsels orally moved for an indefinite continuance of the trial because Mr. Lujan was in unbearable pain from a previous knee surgery and indicated he would need to see his doctors in Thailand possibly for another knee surgery. *See* Mins., ECF No. 410. When the court inquired about the duration of Mr. Lujan's trip and when Mr. Lujan was scheduled to leave, Mr. Lujan indicated that he would leave for Thailand "as soon as possible" even though he had not yet made travel arrangements and Mr. Phillips stated that he could not say how long the continuance request would be until "Mr. Lujan is examined by his doctors." *Id.*

---

[2] A judge who is appointed to the District Court of Guam serves "for the term of ten years and until his successor is chosen and qualified," and, as such, the judge is subject to reappointment at the expiration of their initial ten-year term. *See* 48 U.S.C. § 1424b(a).

The court expressed its concern about having to continue a trial that had already started and inquired about the roles of both counsels. *Id.* Mr. Lujan stated that his "role [in the trial] is to do the cross-examination and do the closing argument." *Id.* Mr. Phillips, on the other hand, was focused on pretrial motions. The court then inquired about Mr. Phillips assuming the cross-examinations during Mr. Lujan's absence. *Id.* Mr. Phillips explained that he is "not Mr. Marasigan's choice of counsel . . . but when he retained Mr. Lujan[,] . . . [he became the Defendant's] choice of counsel." *Id.*

The court reminded counsels that this request was being made after trial had already begun and after witnesses had already testified. *Id.* The court further noted that Mr. Phillips is an able and competent lawyer who has been Defendant Marasigan's lawyer from the beginning of this case. *Id.* The court issued a briefing schedule on the motion, informed the jurors that an issue arose, and adjourned for the day. *Id.*

That evening, Defendant Marasigan filed a "Motion *in Limine* for Continuance," explaining how Mr. Lujan had difficulty standing and walking in court because of serious knee pain. *See* Mot. at 1-2, ECF No. 407. Contrary to representations made earlier in the day, wherein the continuance was to an unknown date, the written motion requested only a one-week continuance to "allow Attorney Lujan to be seen by his doctor and hopefully receive a concrete prognosis." *Id.* at 3. The sudden change of request was only explained by Mr. Phillips's statement in his later declaration that Mr. Lujan informed Mr. Phillips that he "will not need nor be operated on while visiting his doctor in Thailand." *See* Decl. at 3, ECF No. 412. No other explanation was provided.

Defendant Marasigan's counsels argued that Mr. Lujan's presence was necessary at trial because "Defendant Marasigan and Attorney Lujan made very clear to Attorney Phillips that Marasigan's choice of trial counsel was David Lujan." *Id.* at 2. Mr. Phillips then explained that

he was relegated to "serve[] as [Mr.] Lujan's assistant during trial," and Defendant Marasigan would be denied his right to choice of counsel under the Sixth Amendment if a continuance was not granted. *Id.* at 3-4.

Defendants Arthur Chan and Christine Chan joined in the motion to continue, emphasizing that the parties have "been working together closely for months" and "sharing trial strategy and discussing lines of examination with witnesses under the assumption that Attorney Lujan would b[e] responsible for certain lines of questioning." *See* Brief at 2, ECF No. 406; *see also* Brief at 5, ECF No. 408 ("Mr. Chan's case is bolstered by the continued participation of Mr. Marasigan's chosen counsel.").

The Government opposed the request for a one-week continuance on the ground that Defendant Marasigan can proceed with "Mr. Phillips [who] has represented the defendant for almost two years [and] is prepared for trial which has already begun." Opp'n at 2, ECF No. 411. Mr. Phillips filed a reply to the Government's opposition and a declaration that attests to his understanding of Mr. Lujan's medical condition, what Mr. Lujan communicated to him about how he no longer needs an operation and the length of travel, his opinions about Mr. Lujan's success as an attorney in Guam, and his understanding of Defendant Marasigan's choice to have Mr. Lujan be his trial counsel. Decl. at 1-5, ECF No. 412.

**B. March 21, 2025**

On March 21, 2025, the fourth day of trial, the court granted Mr. Lujan's motion to continue trial because "Mr. Lujan has now indicated that he doesn't need surgery . . . and that he's just going to go see his doctors in Thailand" and the requested continuance is now just for one week and not an indefinite time. Mins., ECF No. 415 (*see* recording). At that time, Mr. Razzano, counsel for Defendant Arthur Chan, indicated that he had prescheduled travel

5

beginning on April 6, 2025, for two weeks. The court ordered Mr. Razzano to file a formal motion to continue. *Id.*

The court called in the jury and instructed them that "one of the counsels has to leave off island and so the court has granted that request, and it is a legitimate request . . . and I don't want you to hold that against anybody, whether it's prosecutor or defense, ladies and gentlemen, but it is an urgent matter." *Id.*

Concerned about another possible lengthy delay and the jury's prolonged separation if the court were to grant Mr. Razzano's motion for a two-week mid-trial continuance, the court informed the parties of its plan to hold trial past 5:00 p.m. on the week of April 1, 2025, in the hopes that the Government would at least finish its case-in-chief. The court proposed that trial starts at 8:00 a.m. and ends at 7:00 p.m., with a 15-min break at least every 1.5 to 2 hours, a lunch break of 45 minutes, and an evening break of 30 minutes. This schedule was only to run from April 1-4, 2025, and the court indicated that it would revert to its regular schedule after that time. *See* Mins., ECF No. 440. The court surveyed the jurors about this proposed schedule and received no concerns. *See id.* Additionally, none of the parties objected to this brief period of an extended trial schedule. *Id.*

### C. April 1, 2025

Following the one-week recess, trial resumed on April 1, 2025. *See* Mins., ECF No. 440. Before calling in the jury and proceeding with the Government's case-in-chief, the court noted that Mr. Razzano filed his motion for a two-week continuance, from April 7, 2025, to April 21, 2025, along with the co-Defendants' joinder and Government's opposition. *Id.*; *see also* ECF Nos. 419, 427-30.

The court called in the jury, thanked them for their time and patience during the one-week break, reminded the jurors that the continuance is not to be held against any of the parties,

6

and stated that there is another request for a continuance for a personal reason. *Id.* The court

inquired with the jurors about their availability to continue with trial after the two weeks and

reminded them that this request is not to be held against any of the parties. *Id.*

After clearing up a possible conflict with one juror, the court granted Mr. Razzano's

motion to continue on behalf of Defendant Arthur Chan and proceeded with trial. *Id.* The

Government proceeded to call Alfredo Leon Guerrero as its next witness. *Id.* Mr. Leon Guerrero

was on the stand for approximately 6.5 hours.[3] *Id.* After 6.5 hours, Mr. Leon Guerrero indicated

that he was too tired to continue, so the court excused him with the intention of having him

recalled after he had an opportunity to rest. *Id.* The Government thereafter called Mr. Jerome

Aguon. *Id.*

### D.  April 2, 2025

On April 2, 2025, all counsels were present except Mr. Lujan. *See* Mins., ECF No. 441.

Mr. Phillips indicated that Mr. Lujan told him that he was "sick this morning" and that "he may

have the flu, but he has a stomach problem." Tr. at 4:25-5:7, ECF No. 442. Mr. Phillips then

stated his observation that Mr. Lujan "was piling Kleenex and stuff and he left it and I think your

staff found it." *Id.* at 5:7-5:14. Mr. Phillips then made a request for a one-day continuance on

behalf of Mr. Lujan and his client, stating that Mr. Lujan is "obviously Mr. Marasigan's counsel

of choice" and then provided an explanation about how he is unprepared for trial despite the

duration of his representation of Defendant Marasigan. *See id.* at 5:18-6:21.

In response to Mr. Phillips's request, the parties engaged in the following colloquy with

the court:

> THE COURT: So you're requesting a continuance until tomorrow?
>
> MR. PHILLIPS: Yes, Your Honor.

---

[3] The court notes that Mr. Leon Guerrero is elderly and has physical limitations that warranted the court checking in with him throughout his testimony and allowing him to take a break before continuing with his testimony.

THE COURT: I got -- you guys -- a lot of continuances and delays here by Counsels.

MR. PHILLIPS: Well the same with -- I understand.

THE COURT: The first request for continuance was not -- when you first requested it, you did not have a length of time, you did not have -- your client -- I mean your attorney, your co-Counsel had no length of time, no idea if he would have travel, and the Court had denied it initially and said, you know, you don't have anything before the Court that shows any type of certainty.

And, I'm sorry, I did not notice that Mr. Lujan -- I didn't see that. You're closer to him, but I saw him in court, he seemed to the Court to be perfectly fine when he was walking in and out and conducting cross-examination with the witness. So I didn't notice he had any flu-like symptoms so I just -- I'll place that on the record as far as the Court's observations, Mr. Phillips.

MR. PHILLIPS: Yeah, and if I may also, Your Honor, before I left, because I noticed that he was using the Kleenex and sniffling and everything, I saw a pile and I decided not to touch it. And so when I was mentioning that to Mr. Tenorio this morning, he was kind enough to inform me that he saw it and cleaned it up. But I think co-Counsel will also confirm that they noticed that Mr. Lujan wasn't feeling very well towards the end of the day.

THE COURT: All right. So you mean last night?

MR. PHILLIPS: Yes, I guess we went till 7:30 or so. But the Court may remember, he asked to leave because we were not finished.

THE COURT: That's right, he did ask.

MR. PHILLIPS: Right.

THE COURT: I'll figure -- I'll find out what time he asked. All right, so you're requesting a continuance. Does Mr. Lujan actually have an appointment with the doctor today?

MR. PHILLIPS: Well, he said he was going to see someone, Your Honor. So I don't think he had an appointment before eight, but I would anticipate that he will -- he'll see someone today. That's what he said he was going to do.

THE COURT: Mr. Gavras?

8

MR. GAVRAS: Your Honor, I didn't see the Kleenexes, but after Mr. Lujan's cross-examination of Mr. Leon Guerrero, he stumbled. It was just -- and I mentioned it to him out there that he had stumbled. And then about 30 minutes before Mr. Lujan asked to leave early, I was starting to get up to tell Mr. Phillips, you know, David looks really exhausted, is the way it looked to me, I mean extremely exhausted, maybe he needs to go now. I didn't realize he was sick. I just thought he was way exhausted, way too exhausted to stay in the courtroom. And that's what I saw. So...

THE COURT: On the motion for continuance?

MR. GAVRAS: Oh, sure. I'm fine with it, Judge. Yes.

THE COURT: Mr. Razzano?

MR. RAZZANO: No objection.

THE COURT: Ms. David?

MS. DAVID: Your Honor, we're ready to proceed. I mean the --

THE COURT: Yeah, I feel like there is a lot of -- go ahead, go ahead.

MS. DAVID: We're trying our best, even with the long schedule, to present our case in chief. And I just don't want the jury to --

THE COURT: Well, I'll let the jurors know that defense Counsel's out again, ill. And I'm just going to let 'em know just so that they know what's going on. They're not to hold it against anybody but --

MS. DAVID: I mean I would like to proceed, but I just want to make sure our -- I'm informed that our -- or witnesses are on their way. I apologize if there's going to be a slight delay to that effect if we proceed this morning.

THE COURT: No, that's fine but you have -- you have any other off-island witnesses that are coming in or are these all on-island witness?

MS. DAVID: These are all on-island witnesses.

THE COURT: So there won't be any delay or prejudice as far as that's concerned, at least for today? Or the rest of the trial at least. That's what you're saying to the Court?

MS. DAVID: Yes, Your Honor.

THE COURT: All right. Are all the jurors here?

9

MR. RAZZANO: Actually, Judge, could I make my position a little bit more clear?

(Discussion with clerk.)

THE COURT: Okay, hold on, hold on. I think he -- she -- Anna, I think he confirmed. You're able to double-check? Yes, Mr. Razzano?

MR. RAZZANO: So, of course if Mr. Lujan is sick, he's sick. But my position would be if the Court is going to go forward, whatever witnesses, you know, Jerome Aguon or you know, the Borjas, fine. But Al Leon Guerrero and Won Sun Min have to be cross-examined by David Lujan. That's our position.

THE COURT: Is that also your position, Mr. Gavras?

MR. GAVRAS: Yes, Your Honor. That's actually what we discussed outside.

THE COURT: All right. Why don't we do that, can you handle that, Mr. Phillips? You're an experienced lawyer and you've been handling all the motions and all of the case for a great percentage of the time with Mr. Marasigan. Are you able to cross-examine these witnesses?

MR. PHILLIPS: Your Honor --

THE COURT: The other witnesses, not the co-conspirator, co-defendants.

MR. PHILLIPS: Yeah, I know -- I shouldn't say I know, I may anticipate the Court will not agree, but I think co-Counsel will agree, as an example, when we had what I call -- the aloha guys, and I don't remember anything that co-Counsel asked, obviously I didn't ask any questions, and Mr. Lujan walked up and he simply asked about "Did anybody step forward? Is anybody helping the kids today? Has anybody stepped forward and raised the money?" The answer is no. That's Mr. Lujan. And that's what my client is entitled to. That's why I'm doing motions and he brought on Mr. Lujan. He would not have retained Mr. Lujan, Your Honor, if there was no need for him.

So at that point, you know, I can admit, okay, at that point, call it relegated or what, I'm relegated to certain things, but yeah, I'll do cases with Mr. Lujan for as long as he allows me but --

THE COURT: That's not the question. The issue -- the question is -- Mr. Razzano had already proposed -- made that similar proposal earlier in his writings with regard to the co-conspirator, co-defendants that I guess that the parties had indicated that they felt they would like him to -- parties,

10

including Mr. Gavras and Mr. Razzano's clients, that they wanted him to conduct the cross-examination of them. And the other witness, they would mind if -- or they would propose that you would handle the other witnesses. Are you saying that you're not able to do it?

MR. PHILLIPS: Your Honor, I'm saying that my client's choice is Mr. Lujan. And with all due respect to co-Counsel, some of the other names they may not find substantive. In my experience, they're all substantive, each one of them so far. Now, there may be a custodian of records that shows up, but Your Honor may remember at the very beginning, we were even arguing about whether or not these Rev & Tax custodians of records, because they're not, they're substantive witnesses. Custodians of records hands it over and it's like a chain of custody as opposed to going through the whole thing, presenting the documents to the jury, in my opinion, they're all substantive witnesses, Your Honor. And my client has chosen Mr. Lujan. The record will show that he hired him after he hired me. And so clearly --

THE COURT: Well, he hired him after a co-defendant died.

MR. PHILLIPS: Right.

THE COURT: No, it wasn't after he hired you, it was way after he hired you, not immediately after he hired you.

MR. PHILLIPS: That's correct, Your Honor.

THE COURT: So let's get the record straight, he hired you I think four months before this trial, this trial -- this case has been ongoing for a few years now. So -- and there -- and I'm not even sure if there is an issue of potential conflict. I guess the prosecutor didn't raise that when there was an entry of appearance by David Lujan to represent your client after he had been representing another co-defendant. You know, but anyway, that's not before the court. But the Court hadn't thought about that. I don't think you -- Ms. David, you had ever --

MS. DAVID: That is correct. The government did not raise that issue.

THE COURT: And you didn't think there was a conflict? Or you just hadn't thought about it?

MS. DAVID: I don't want to say yes and no, but I didn't raise the issue, Your Honor.

THE COURT: Right, okay. The Court does note that. In terms of ethical issues, that that could be a problem too. But anyway, all right, so you're not prepared then, Mr. Phillips, to conduct the cross-examination of the other witnesses, that's what you're telling the Court?

11

MR. PHILLIPS: Your Honor, I'm not my client's counsel of choice, it's Mr. Lujan.

THE COURT: All right. So you're not prepared? You're not prepared to do it?

MR. PHILLIPS: No, I'm not prepared, I had no idea until early this morning that [Mr. Lujan] was not going to make it. So, no, I'm not. Although I think the significant question is whether I'm my client's counsel of choice. The fact --

THE COURT: All right. Well, we will continue pushing on. I'm going to call in the jurors, speak to the jurors, and if I continue this case today, we're going to come back again tomorrow. I'll tell the jurors to come back and we're going to try to proceed. Because -- and I will -- I'll even push through Saturday or Sunday if we have to. I will tell you that now, Counsels. I think that -- you know, I just feel like some of these delay tactics, even including some of the examination of the witnesses, is unnecessary. And so I want to proceed forward. I think the jurors are extremely patient, we -- they've been extremely patient and very generous in saying that they will come back to the court, even though there is going to be a separation for Mr. Lujan to have to go to Thailand for -- on the first day he indicated that he might have an operation or some procedure in Thailand, and then the next day, he says, oh, no, I don't have an operation, even though he's supposed to go see his doctor and make sure that was taken care of, but I need to go see him. And so, I mean I find that a little suspicious. I will say that to you, Counsel, right now.

And then now we come back here, and I'm not saying that he's feigning illness, but the Court did not notice that at all in yesterday's presentation, that he was ill at all. You guys have made your observations, I made my observation as the trial Judge. So that's already on the record. So let me call in the jurors and then --

*Id.* at 8:23-17:10. At this point, counsel for Defendant Christine Chan, Mr. Gavras, indicated that he would like to speak with defense regarding a possible solution to "be more expeditious" but indicated that they were unable to do so. *Id.* at 17:11-18-9. Mr. Gavras added, "You Honor, I would like to say in no way are these tactics." *Id.* at 18:8-18:9. The court responded:

THE COURT: Well, I'm suspicious, Counsel. I'm not saying that about Mr. Razzano, but I was suspicious when the request first came in regarding the Thailand trip and there was no -- you know, just a change immediately, like "Oh, by the way, yes, I have to go in for a procedure, I

have to go immediately." And the next morning, "Oh, no, we don't have to do it now. I don't have to see the doctor about that, I just have to go -- my wife has a ticket on Monday, I have no ticket to go." You know, it just sounded suspicious to me at the time. I will say that. Okay. Nothing else then?

MR. GAVRAS: No, ma'am.

THE COURT: All right. So the Court will say this, number one, I have not ruled on the Sixth Amendment right to counsel of one's choice. The Court has not made that ruling yet. I'm going -- I have just continued the case because Mr. Lujan had to go to a medical appointment as he indicated. So I'm going to take this time, I've already done research on this and I'm going to take this time this afternoon, I'll be prepared to make a ruling on that tomorrow morning. And I'm going to assume that Mr. Lujan is here. If he's not here, I would say that, Mr. Phillips, you should be prepared to proceed with representing your client, Mr. Marasigan. If Mr. Phillips -- Mr. Lujan is not present and the Court makes a ruling on -- against your position on Sixth Amendment right to Counsel.

Also, too, with regard to -- and I didn't ask this, because I -- you know, when you guys -- all of you are officers of the court when you come before the court, but I will say that because of my own observation of Mr. Lujan, which I indicated already, the Court will require then that Mr. Lujan submit to the Court a doctor's excuse or a doctor's appointment memorialization indicating that he went today, because you had indicated, Mr. Phillips, that he doesn't have an appointment as of this morning, he did not have one before 8 o'clock or 8 o'clock this morning. So the Court will require that.

The Court is concerned about the jurors. The Court has -- we've asked 18 jurors to come in and proceed with this trial. We've already lost one. There is a possibility that we're going to lose another, but those have been taken care of, the person that had a training issue because of the continuance requested by Mr. Razzano. So we still are safe with the jurors, but let me call in the jurors, please. They're all ready to go.

*Id.* at 18:10-20:3. The court then called in the jury and stated the following:

THE COURT: Welcome back, ladies and gentlemen of the jury. I know we were supposed to start at eight, but I received a message from Mr. Phillips that his co-counsel, Mr. Lujan, is ill. And so they've asked for a continuance today and I'm sorry that I'm going to have to grant it, at least for today. I will have to do that.

And a couple things: I'll ask you to come back tomorrow. Please keep an open mind, do not form or express any opinion on this case until it's

13

submitted to you. Do not speak to anyone on any subject connected with this trial. I will say if anyone tries to get in contact with you, you must tell me immediately. I am sorry. I know that, you know, we're trying to move on this. The Court is concerned about the efficient administration of justice on the parts of all these lawyers and yourselves and I know that you have done your very best, each of you, ladies and gentlemen of the jury.

So I thank each and every one of you for your time. But unfortunately, the Court will -- at the request of Counsels, the Court will have to grant the continuance for today. We will start tomorrow morning at 8:00 a.m. And so please be on time and I'll see you at 8, so I apologize for this inconvenience to all of you again. All right. I'm sorry about that.

Please rise for the jury.

*Id.* at 20:5-21:3. The court then proceeded to discuss Defendant Christine Chan's outstanding evidentiary objection with the parties as it arose during the testimony of Mr. Aguon the day prior. *See* Mins., ECF No. 441.

### E. April 3, 2025

On April 3, 2025, all parties and counsels were present except for Mr. Lujan, who arrived late.[4] *See* Tr. at 4:01-5:22, ECF No. 450. Upon Mr. Lujan's arrival, he orally moved to disqualify the undersigned from presiding over this case for being prejudiced against him. *See* Am. Mins., ECF No. 454; Tr. at 6:17-8:21, ECF No. 450. The basis for the motion was founded on Mr. Lujan's belief that the undersigned had "hard feelings against [him]" due to our "history that really turned sour on March 21, 2022[,] in [*United States v. Walker, et al.*] . . . [when] the Ninth Circuit reversed . . . [my] decision to sever Mr. Crowe." Tr. at 7:8-8:21, ECF No. 450. According to Mr. Lujan, this reversal is "just something that [the undersigned] can't overcome," which

---

[4] The court notes that on more than one occasion, Mr. Lujan has failed to follow court orders or conduct himself respectfully. For example, the court specifically ordered Mr. Lujan to provide a doctor's note or other memorialization of his medical appointment on April 2, 2025. Instead, Mr. Lujan provided an email about insurance coverage for his prior appointment in Thailand. *See* Mins., ECF Nos. 441, 454. Mr. Lujan also showed up to court about thirty minutes late on April 3, 2025, without providing any explanation for his tardiness. *See* Am. Mins., ECF No. 454. Despite these unprofessional and disrespectful behaviors, the court had shown nothing but patience to Mr. Lujan and had not held him in contempt or issued sanctions.

means that the undersigned "cannot be fair to Mr. Marasigan." *Id.* at 7:05-7:06, 8:14-8:16. The court denied Mr. Lujan's motion, instructed to him to file a written motion, and indicated that the court will proceed with trial. *Id.* at 8:17-8:21.

In response, Mr. Lujan stated, "Well, Your Honor, at this time then, if you're not going to allow me, then I'm going to withdraw from this case." *Id.* at 8:22-8:24. Mr. Lujan then began to walk out of the courtroom. However, the court called Mr. Lujan back before he left the courtroom and denied his motion to withdraw, explaining that "[y]ou're in the middle of trial, you have an obligation to your client." *Id.* at 9:19-10:23. After a brief discussion of the court's prior observations regarding Mr. Lujan's conditions and the most recent requests for mid-trial continuances, Mr. Lujan claimed that the court's observations were not "fair and just." Mr. Lujan then proceeded to state the following:

> MR. LUJAN: Just because you're the judge doesn't mean, Your Honor, that you're, you know, you're the god. You may be the god in here, but not outside and not with the Ninth Circuit.
>
> THE COURT: Mr. Lujan, Mr. Lujan, please be more civil in the courtroom.
>
> MR. LUJAN: Well --
>
> THE COURT: All right. Is there anything else? The Court is denying your request to withdraw as Counsel.
>
> MR. LUJAN: Well, then I'm just not going to do anything, period.
>
> THE COURT: Well that's up to you. This is -- Mr. Marasigan has retained you, that's up to you to decide. You and Mr. Marasigan.

*Id.* at 11:20-12:11.

Immediately after Mr. Lujan's statement that he would "not do anything, period," the court asked the parties whether they were prepared to proceed with trial as scheduled, counsels for Defendants Arthur Chan and Christine Chan indicated that they were prepared. *Id.* at 12:12-

15

12:20. However, Mr. Phillips indicated that he is "not prepared" because "Mr. Lujan is [Mr. Marasigan's] counsel of choice." *Id.* at 12:22-12:23. Mr. Phillips then proceeded to explain:

> MR. PHILLIPS: Your Honor, I've never done a trial, ever, that I didn't have somebody at the office working for me, and whether that person is present, Mr. Lujan has done the same, and I would suggest that at least the other Counsel have done the same. Whether that person is sitting here or at the office, I don't believe a judge would ever call an attorney from an office, an associate, to take over.
>
> Your Honor, you may not see it, and I'll defer to co-Counsel, the privilege of working with David Lujan is why I'm here.
>
> THE COURT: You already made that point.
>
> MR. PHILLIPS: I'm going to make it again, Your Honor, because we're accused of delay tactics. And, Your Honor, we -- well, I asked, because I wanted to see a transcription of what happened yesterday and what Your Honor said to us, but more importantly, I think Your Honor what you said to the jury, was really just uncalled for. It's really uncalled for, your opinion with them with regard to baseless allegations, and you can ask [Mr. Gavras] and [Mr. Razzano], is there any -- was there ever a discussion regarding delay tactics. Never. And maybe we're on tape, God knows what we said, but we never spoke about anything to get a delay. In fact, we were trying to help [Mr. Razzano]. And so there is no question about that, Your Honor. So if the Court [were] to allege as you did this morning that you're observing delay tactics, how about the fact that the witnesses can't take the stand? That happens, Your Honor. Did you see one -- I never accused Ms. David of aha, because you know, Mr. Lujan was doing pretty well with Mr. Leon Guerrero, of course he doesn't show up the next day. You didn't hear that from us, Your Honor. Things like that happen, especially when people reach a certain age, it becomes more frequent. And so whether, you know --
>
> THE COURT: I'm sorry, when people reach a certain age? What are you talking about?
>
> MR. PHILLIPS: Yesterday, Your Honor, the government was not prepared with any witness when we were ready to start. And Your Honor said, you know, get your witnesses together, and Ms. David, I think, frankly explained that it's not her fault but Jerome Aguon was not here, Mr. Leon Guerrero had called in or they contacted him and he said he was not coming. And that's what happens, Your Honor, jurors do the same. And so the idea that, you know, imagine if we were saying aha, we suspect that Ms. David has delay tactics for Mr. Leon Guerrero, I think Your Honor would say, Mr. Phillips, because it would be baseless, right. And so for the Court to express those kinds of views Your Honor,

16

repeatedly, first of all, they're baseless, but number two, they do have an effect, Your Honor. Look at what's going on here. And to think that the jury is not perceiving that you feel a certain way, I would suggest is not correct.

THE COURT: The Court has already cautioned the jury not to hold any delays by anybody against the parties or Counsels. The Court has done that. And I indicated that to the jurors.

MR. PHILLIPS: That sentence may have been said, Your Honor, but there was much more said and there was much more conveyed to the jury. And that's just -- and then with us, it's like you know, I think there is -- and I forgot the words you used but it was something about "just get to the facts and move on." There has never been a better presentation that I've seen than what Mr. Lujan did with Mr. Leon Guerrero. And I've seen Mr. Lujan a lot and again, I suggested –

THE COURT: Well nobody -- Mr. Phillips, nobody is questioning his cross-examination.

MR. PHILLIPS: Well you were yesterday, Your Honor, you said -- yes, you were.

THE COURT: All right. That's it, file your motion.

MS. DAVID: Your Honor, I would just note for the record that yesterday, we did have our government witnesses. In fact, I asked Court if we could excuse them when we learned that we weren't going to have any session yesterday. I would note that Mr. Leon Guerrero is still sick though.

*Id.* at 13:1-15:24.

Thereafter, the court recessed and instructed Mr. Lujan to file his motion for disqualification on an expedited schedule. *Id.* at 16:16-17:13; *see also* Am. Mins., ECF No. 454. The court further ordered Mr. Lujan and Mr. Phillips to file their motions to withdraw on the same schedule if they intended to proceed as such. Tr. at 16:18-17:13, ECF No. 450. The court also ordered the Government to respond, and Defendant Marasigan was to file a reply. *Id.* The court further cautioned Mr. Phillips and Mr. Lujan with the following:

THE COURT: I will expect that both Mr. Lujan and Mr. Phillips will have [counseled Mr. Marasigan] as to what this will mean for his representation in the middle of trial

17

. . .

> and I will continue to remind Counsels of your ethical obligations as
> lawyers to your clients, to the Court[,] and to the administration of
> justice.

*Id.* at 17:8-17:25.

The court then called in the jury, informed them that a legal matter has been brought to the court's attention that must be resolved before proceeding with trial, and instructed them "not [to] hold this against either of the parties or their attorneys." *Id.* at 18:21-19:5. The court then ordered that the jurors return on April 21, 2025, to proceed with trial from 8:30 a.m. to 4:00 p.m. *Id.* at 19:5-20:24. Finally, before excusing the jurors, the court cautioned them not to communicate with anyone about the subject of the trial. *Id.*

Outside the presence of the jury, the court allowed the parties to argue their positions on Defendant Christine Chan's objection to certain evidence as argued the day prior. *Id.* at 21:5-23:2. Not long after the arguments began, Mr. Lujan then asked that he, Mr. Phillips, and their client be excused to work on the motions. *Id.* at 23:5-25-7. The court granted their request, and counsels waived their and their client's presences for the remainder of the arguments, indicating that Defendant Marasigan "[will] rely on the co-counsels." *Id.* at 23:20-21.

### F. The Written Motions

As explained above, Mr. Lujan, on behalf of Defendant Marasigan, filed successive motions to disqualify the undersigned from presiding over this case. *See* ECF Nos. 449, 457. The first motion was filed on April 3, 2025, and the second motion was filed on April 7, 2025. *See* ECF Nos. 449, 457. Mr. Lujan filed two affidavits in support of the Motion to Disqualify (ECF Nos. 448, 452) and a declaration in support of the Motion to Recuse (ECF No. 457-1). The primary difference between the motions is the grounds upon which they are made. The Motion to Disqualify is made under both 28 U.S.C. § 144 and 28 U.S.C. § 455, and the Motion to Recuse is

18

made only under 28 U.S.C. § 455. *See* ECF Nos. 449, 457. Beyond this distinction, the bases for the recusal and disqualification motions are similar.

In the Motion to Disqualify, Defendant Marasigan first requests that a separate judge be appointed to hear and decide the motion pursuant to 28 U.S.C. § 144. *See* Mot. to Disqualify at 1-2, ECF No. 449. The arguments made in support of the undersigned's disqualification under sections 144 and 455 are as follows: (1) the undersigned harbors personal bias and prejudice against Mr. Lujan that has manifested in the trial proceedings in this case; and (2) the undersigned's alleged prejudice against Mr. Lujan originates from the Ninth Circuit's reversal of the court's decision in a separate case in which Mr. Lujan represented a defendant. *Id.* at 2-3. The first supporting affidavit, signed under penalty of perjury[5], restates the primary argument in the motion, and attaches five transcripts, a total of 171 pages, including four transcripts from *United States v. Walker, et al.*, Criminal Case No. 18-00010 (D. Guam) and one transcript excerpt from the proceedings in this case on April 2, 2025. *See* Affidavit, ECF No. 448. No factual assertions beyond a restatement of the arguments are made in the affidavit, which Mr. Lujan appears to attribute as a product of an expedited filing deadline "as further evidence of Judge Tydingco-Gatewood's bias and prejudice against me." *Id.* at 2. The second affidavit includes only an excerpted transcript from the proceedings in this case on April 3, 2025. *See* Supp. Affidavit, ECF No. 452.

In the Motion to Recuse, Defendant Marasigan requests that the undersigned be disqualified because "my impartiality and bias against Attorney Lujan might reasonably be questioned." Mot. to Recuse at 1, ECF No. 457. Unlike the Motion to Disqualify, the Motion to Recuse is styled a memorandum of law that explains the grounds for a judge's self-recusal under

---

[5] The court notes that Mr. Lujan signed the affidavit as a representative of his co-counsel's law firm, Phillips & Bordallo, P.C. *See* Affidavit at 3, ECF No. 448. The supplemental affidavit and remaining filings are properly signed under Mr. Lujan's law firm, Lujan & Wolff LLP. *E.g.*, Mot. to Recuse at 5, ECF No. 457.

19

28 U.S.C. § 455, and then makes further factual allegations in support of the requested relief. *Id.* at 2-3. The arguments made by Defendant Marasigan in support of the undersigned's disqualification are as follows: (1) the undersigned is prejudiced against Mr. Lujan because "it has recently come to light that [the undersigned] will not be reappointed" and a "likely factor in [that] decision" was because the Ninth Circuit reversed the court's decision to sever Mr. Lujan's former client, Mr. Kenneth Rufus Crowe, in *United States v. Walker, et al.*; (2) the undersigned holds this reversal and supposed non-reappointment against Mr. Lujan; and (3) the undersigned's decision to extend the trial schedule for one week and "only [provide] 10-15 minutes each day for lunch" is physically taxing to Mr. Lujan and his client but prevents him from "consult[ing] with his client . . . and assess[ing] the case and conduct[ing] legal research]." *Id.* at 3-6. Mr. Lujan's declaration in support of the Motion to Recuse states Mr. Lujan's role in *United States v. Walker, et al.*, explains the procedural posture and the Ninth Circuit's ruling in that case, restates the factual arguments made in the memorandum of law, and concludes that the undersigned is "finding it difficult to be impartial to [Mr. Lujan] and [his] client in this matter." Decl. at 1-3, ECF No. 457-1.

The Government opposed both motions, arguing that the undersigned's disqualification or recusal is not proper under the substantive standard employed in 28 U.S.C. § 455 and that Defendant Marasigan has not met his burden of alleging specific facts in support of such arguments. *See* ECF Nos. 455, 463.

In response to the Government's first opposition, Defendant Marasigan filed a reply that excerpts portions of the Ninth Circuit's decision in *United States v. Crowe* and identifies specific portions of the exhibits attached to his prior affidavits that are believed to demonstrate the undersigned's "extreme bias and prejudice." *See* Reply, ECF No. 456.

**II. Legal Standard**

20

Under 28 U.S.C. § 144, when a party files a "timely and sufficient affidavit" that attests that the presiding judge "has a personal bias or prejudice against either him or in favor of an adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." The affidavit must "state the facts and the reasons for the belief that the prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file within such time." *Id.* Parties are prohibited from filing more than one affidavit, and the affidavit must be filed with "a certificate of counsel of record stating that it is made in good faith." *Id.* Similarly, under 28 U.S.C. § 455(a), a judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." A judge must also disqualify herself when she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings." *Id.* at § 455(b)(1).

Both statutes have the same substantive standard for recusal: "[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)). "The reasonable person is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018) (quoting *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)). "The standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Id.*; *see also Sibla*, 624 F.2d at 868 ("[M]ere conclusory allegations, such as claimant's, are insufficient to support a claim of bias or prejudice such that recusal is required.").

Motions under both statutes must be made in a timely fashion. *See United States v. Mikhel*, 889 F.3d at 1026-27. "While there is no *per se* rule that recusal motions must be made at a fixed point in order to be timely, such motions should be filed with reasonable promptness after the ground for such a motion is ascertained." *Id.* (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992)). Where "unexplained delay" in filing a recusal motion "'suggests that the recusal statute is being misused for strategic purposes,' the motion will be denied as untimely." *Id.* (citations omitted).

The statutes differ, however, in their procedures. *See United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) (explaining how the two sections are complementary). On the one hand, Section 455 has no procedural requirements. The judge just has the duty to evaluate whether she should be recused. *Id.* at 867-68. Section 455 also does not require that the question of recusal be referred to another judge. *Id.* On the other hand, section 144 "explicitly conditions relief upon the filing of a timely and legally sufficient affidavit." *Id.* (citation omitted). "If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for relief under section 144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for a determination of its merits." *Id.* (citing *United States v. Azhocar*, 581 F.2d 735, 738-40 (9th Cir. 1978) (Moreover, since the inquiry is addressed to the facial sufficiency of the affidavit—not the truth or falsity of the facts stated therein, . . . [a] 'hearing' is unnecessary.")).

An affidavit is not legally sufficient unless it "state[s] facts which if true fairly support the allegation that bias or prejudice stemming from (1) an extrajudicial source (2) may prevent a fair decision on the merits," and (3) the facts must substantially support the allegation of bias. *Azhocar*, 581 F.2d at 739-40; *see also Sibla*, 624 F.2d at 868. Disagreement with a court ruling is not a legally cognizable ground for recusal. *See Studley*, 783 F.2d 934, 939 (9th Cir. 1986). As

such, allegations of bias, partiality, and prejudice must stem from an extrajudicial source to warrant disqualification. *See Likety v. United States*, 510 U.S. 540, 554 (1994). In fact, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* (explaining that "opinions formed by a judge on the basis of facts introduced or events occurring in judicial proceedings do not provide a basis for recusal unless they indicate that the judge has 'a deep-seated favoritism or antagonism that would make fair judgment impossible'"). Although the evaluation of whether the affidavit is legally sufficient under section 144 determines whether referral to another judge is necessary, the same requirement that bias or prejudice must be "directed at a party and stem[] from an extrajudicial source" is the same under section 455. *Sibla*, 624 F.2d at 689.

### III. Discussion

#### A. Motion Under 28 U.S.C. § 144

Defendant Marasigan's Motion to Disqualify relies on 28 U.S.C. § 144 as a source of law to disqualify the undersigned from presiding over this case. *See* Mot. to Disqualify, ECF No. 449. Upon review of the Motion to Disqualify and the supporting affidavits, the relief requested under section 144 must be denied because the affidavits in support of such motion are untimely and legally insufficient.

The Motion to Disqualify was filed on April 3, 2025, following the court's denial of Mr. Lujan's oral motion to disqualify the undersigned from this case. *See* ECF Nos. 448, 449, 452, 453. The statute explicitly conditions the review of such motions upon *timely* filing, which is either within ten days "before the beginning of the term at which the proceeding is to be heard" or after good cause is shown for failure to meet this deadline. *See* 28 U.S.C. § 144.

The indictment in this case was filed on May 10, 2023, and Mr. Lujan's representation of Defendant Marasigan began on October 29, 2024. *See* ECF Nos. 1, 235. However, even though

Mr. Lujan's representation of Defendant Marasigan did not begin until October 29, 2024, approximately five months before trial, he previously represented former codefendant Richard Brown since at least June 15, 2023, until his passing. *See* ECF Nos. 36, 160, 161. As such, Mr. Lujan has been on this case for a total of approximately one year and ten months, whether as counsel to Mr. Brown or to Mr. Marasigan. And despite the length of Mr. Lujan's involvement in this case, no motion to disqualify the undersigned was filed until seven days into trial.

Moreover, the Motion to Disqualify does not show good cause for the failure to timely file. The explanation provided in the Motion to Disqualify and supporting affidavit explain that that the undersigned's "personal bias and prejudice against [Mr. Lujan] manifested in these proceedings but originat[ed] for the most part from in-and-out of court encounters in a separate case." Mot. to Disqualify at 2, ECF No. 449. Interpreting this contention and other related contentions in Defendant Marasigan's favor, the court assumes that the Motion to Disqualify and Mr. Lujan's supporting affidavit are attempting to explain that the alleged bias and prejudice did not become apparent until the recent trial proceedings. *See id.* at 2-3; Affidavit at 1, ECF No. 448. Even so, good cause has not been shown, particularly considering the extent of Mr. Lujan's involvement in this case leading up to these proceedings and how the significant majority of arguments made in favor of the undersigned's disqualification rely on decisions rendered by the undersigned and the Ninth Circuit in *United States v. Crowe*. In his first affidavit, Mr. Lujan points to the "limited timeframe" that was provided to file such motion to excuse the untimely filing. *See* Affidavit at 2, ECF No. 448. This contention ignores the fact that the oral motion was made mid-trial, after eleven government witnesses[6] took the stand and after more than a year and a half worth of proceedings, and it is supported only by the conclusion that "Judge Tydingco-Gatewood's baseless comments, and her rulings (or failure to rule) alerted Attorney Lujan to the

---

[6] The court notes that this is over half of the Government's witnesses.

24

Judge's apparent and extreme dislike for Attorney Lujan." Mot. to Disqualify at 2, ECF No. 449. Without more, the court cannot find that there has been good cause shown to excuse Defendant Marasigan's failure to timely file. Accordingly, the Motion to Disqualify is untimely under 28 U.S.C. § 144.

Defendant Marasigan's Motion to Disqualify and supporting affidavits are also legally insufficient to warrant further review under 28 U.S.C. § 144. As explained above, the affidavit must state facts that substantially and fairly support allegations of bias or prejudice that stem from an extrajudicial source and may prevent a fair decision on the merits. *Azhocar*, 581 F.2d at 739-40; *see also Sibla*, 624 F.2d at 868. The filings under section 144 do not meet these requirements. First and foremost, the source of bias and prejudice articulated in the Motion to Disqualify and supporting affidavits stem from judicial sources—namely, the Ninth Circuit reversal of the undersigned's decision to sever Mr. Lujan's client in *United States v. Walker, et al.*, and the "transcripts of the last couple days" in this case. *See* Mot. to Disqualify at 2, ECF No. 449; *see also Likety*, 510 U.S. at 554. The Motion also fails to articulate any arguments and the affidavits fail to attest to any indication that the undersigned has exhibited a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Likety*, 510 U.S. at 554.

Furthermore, the Motion to Disqualify makes conclusory arguments supported only by unidentified facts across 171 pages worth of transcripts for the court to inspect. *See* Mot. to Disqualify, ECF No. 449; Affidavit, ECF No. 448. The alleged facts in the Motion to Disqualify are not stated with particularity that supports the contentions that the undersigned is substantially biased against Mr. Lujan or his client. *See Azhocar*, 581 F.2d at 739-40. It is not until Defendant Marasigan's reply to the Government's opposition that he identifies excerpts from the Ninth Circuit's decision in *United States v. Crowe*, and the proceedings in this case to support his conclusions. *See* Reply, ECF No. 456. Again, however, these contentions fail to allege sources of

bias and prejudice that stem from extrajudicial sources and, therefore, should be denied under 28 U.S.C. § 144. *See Studley*, 783 F.2d at 939 ("[A] judge's prior adverse ruling is not sufficient cause for recusal.").

Therefore, the court denies Defendant Marasigan's Motion to Disqualify under 28 U.S.C. § 144 for failure to file a timely motion and legally sufficient affidavit. As such, the court need not refer the motion to a separate judge for resolution. *See* 28 U.S.C. § 144. The Motion to Disqualify will now be analyzed under 28 U.S.C. § 455 below.

### B. Motions Under 28 U.S.C. § 455

Defendant Marasigan also grounded his Motion to Disqualify and Motion to Recuse pursuant to 28 U.S.C. § 455. *See* ECF Nos. 449, 457. A judge must recuse herself under section 455(b)(1) where "[s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). As explained above, the legal standard for evaluating motions under section 455 require the presiding judge to evaluate: "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Hernandez*, 109 F.3d at 1453 (citation omitted). This standard should not be interpreted such that it mandates recusal upon "the merest unsubstantiated suggestion of personal bias or prejudice." *Mikhel*, 889 F.3d at 1027. As with affidavits reviewed under 28 U.S.C. § 144, allegations of bias or prejudice must be based on extrajudicial sources. *Sibla*, 624 F.2d at 868. Here, the Motion to Disqualify and Motion to Recuse fail to meet this standard.

In the first motion, the Motion to Disqualify, Mr. Lujan states that "Attorney Lujan's Affidavit lists the facts and reasons Attorney Lujan believes Judge Tydingco-Gatewood harbors bias and prejudice against Attorney Lujan." *See* Mot. to Disqualify at 2, ECF No. 449. Rather than articulating such facts, Mr. Lujan lists and attaches five transcripts, four from the court's

proceedings in *United States v. Walker, et al,* and one from this case. *See* Affidavit, ECF No. 448. Mr. Lujan also attests to only one alleged fact beyond the attached transcripts: "Judge Tydingco-Gatewood harbors personal bias and prejudice against me manifested in these proceedings but originating for the most part from there [*sic*] in-and-out of court encounters in a separate case in which the Ninth Circuit overturned Judge Tydingco-Gatewood." *Id.* at 1. Mr. Lujan's attestation is simply an unsubstantiated conclusion that fails to provide any adequate grounds for relief under 28 U.S.C. § 455.

Moreover, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases . . . *may* [support a bias or partiality challenge] if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Likety*, 510 U.S. at 555-56. Defendant Marasigan has not met this standard. He has not provided any alleged fact from an extrajudicial source nor has he provided any alleged fact that rises to the level of a high degree of favoritism or antagonism to make fair judgment impossible in this trial. Accordingly, the Motion to Disqualify is denied.

In the second motion, the Motion to Recuse, Defendant Marasigan attempts to take a second bite at the apple by attempting to identify an extrajudicial source to support his original motion under 28 U.S.C. § 455.[7] *See* Mot. to Recuse, ECF No. 457. Therein, Defendant Marasigan writes, and Mr. Lujan similarly attests to in his supporting declaration, that "it has recently come to light that Judge Tydingco-Gatewood will not be reappointed to the position of District Judge, and a likely factor in the decision not to reappoint her is her mishandling of

---

[7] The court notes that Defendant Marasigan has not provided a justification for his second and successive motion under 28 U.S.C. § 455. While there is no explicit restriction on the filing of more than one motion under 28 U.S.C. § 455, as is in 28 U.S.C. § 144, the motions must be made in a timely fashion and with "reasonable promptness after the ground for such motion is ascertained." *See Mikhel*, 889 F.3d at 1026-27 (citation omitted). As stated above, unexplained delay in the filing of a recusal motion "suggests that the recusal statute is being misused for strategic purposes," and the motion should be denied as untimely.

27

[*United States v. Crowe*], specifically her decision to sever Attorney Lujan's then-client Kenneth Rufus Crowe." *Id.* at 3. The motion further states that "[t]he animosity that Judge Tydingco-Gatewood feels toward Attorney Lujan has poured over to the Judge's treatment of Attorney Lujan and his client in the instant litigation . . . [as] apparent retribution for Attorney Lujan's perceived fault in causing delays in [*United States v. Walker, et al.*]." *Id.* at 3-4. Defendant Marasigan then points to the court's setting of a "physically taxing" and "almost-impossible" trial schedule "so soon after learning that she would not be reappointed as District Judge, quite likely because of her handling of the Crowe severance, strongly suggests that the Judge is lashing out at Attorney Lujan for his perceived role in causing her to lose her position as District Judge." *Id.* Mr. Lujan's supporting declaration restates those same speculations and conclusions, along with at least one false statement of alleged fact, i.e., that "The Judge has ordered that trial will be held seven days per week, with only 10-15 minutes each day for lunch." *Id.* at 457-1.

The Motion to Recuse is premised entirely on the assumption that the undersigned bears significant bias and prejudice against Mr. Lujan, at the expense of his client, for a decision rendered in a separate prior criminal case dating back to over three years ago. Defendant Marasigan's attempt to tie this idea to the factually unsupported conclusion that this somehow has any influence on the undersigned's judicial renomination fails to make his argument any more "extrajudicial" for purposes of evaluating whether recusal is proper under 28 U.S.C. § 455 than was asserted in the Motion to Disqualify. Again, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Likety v. United States*, 510 U.S. at 554. And Defendant Marasigan has not alleged facts sufficient to support the conclusion that the undersigned has "a deep-seated favoritism or antagonism that would make fair judgment impossible" in this case. *Id.*

First, Defendant Marasigan's mischaracterization of the court's proposal to proceed with trial through the weekend or after hours is not the same as setting an "almost-impossible" trial schedule, nor do such statements demonstrate a particular prejudice toward him or his attorney. The court has routinely held court after hours, on weekends and even on holidays, when it finds it necessary. For example, in *United States v. Sardoma*, the court held trial past 5:00 p.m., including on Saturdays and on July 4th. *See United States v. Sardoma*, Criminal Case No. 12-00010 (D. Guam; *see also Official Committee of Unsecured Creditors v. Archbishop of Agana*, Adversary Proceeding No. 19-00001 (D. Guam) (holding trial on a Saturday).

As noted by the court, it was concerned with the jury's prolonged separation as a result of a one-week continuance and another possible two-week continuance,[8] particularly when the Government was close to finishing its case-in-chief, that holding trial past 5:00 p.m. from April 1-4, 2025, was a reasonable resolution especially when the jurors were agreeable to the extended hours and none of the parties opposed. Mindful of the long hours, the court's proposed schedule included 15-minute breaks at least every 1.5 to 2 hours, a lunch break of 45 minutes, and an evening break of 30 minutes.[9]

As alleged in the motion and declaration of Mr. Lujan, there are no facts that support the contention that this limited extension to the trial schedule was made to inhibit Mr. Lujan's representation of his client.

Second, Defendant Marasigan's identification of the court's statements to the parties outside the presence of the jury and those made to the jury ignore the facts as they transpired in this case. First, on numerous occasions, the court reminded the jury not to hold its grant of the requests for continuances against the parties. *E.g.*, Mins., ECF No. 415. Second, the court's

---

[8] At the time, the court had not ruled on Mr. Razzano's motion for a two-week continuance.
[9] The court notes that this schedule was only adhered to on April 1, 2025, due to the court's continuance for Mr. Lujan's illness and the motions that followed.

statement to the parties outside the presence of the jury indicate *skepticism* of delay tactics given the last-minute nature of the request, the changing facts of a previous request,[10] and the fact that the request was now the third mid-trial request for a continuance. Prior to trial, there were also attempts to continue, on the eve of trial, such as when the defendants failed to request for discovery materials from the Department of Revenue and Taxation. Regardless, Defendant Marasigan fails to allege how these statements about his attorney have prejudiced him in this case.

Finally, Defendant Marasigan's counsels failed to show any prejudice by the court's statements to the jury about "trying to move" forward and its concern about "the efficient administration of justice" in the context of granting Defendant Marasigan's one-day continuance.

Moreover, the cases cited by Defendant Marasigan in the Motion to Recuse do not lend themselves to more than general principles of law under section 455. For example, in *In re Creech*, the Ninth Circuit held that the judge abused her discretion in failing to recuse herself where "her longstanding relationship with Prosecuting Attorney Jan Bennetts might call into question any judgments she would have made regarding Bennett's own professional and legal obligations." 119 F.4th 1114, 1122-26 (9th Cir. 2024). And in *United States v. Carignan*, the Ninth Circuit held that the appellant failed to "set forth any facts which would lead us to believe

---

[10] On March 20, 2025, when Defendant Marasigan made his oral request to continue the trial, the request was to an unknown date, seemingly full of uncertainties. Defendant Marasigan, through counsel, represented to the court that Mr. Lujan was in unbearable pain, that he must immediately see his doctors in Thailand, that depending on his doctors' consult, he may need a re-operation of his knee, which he had been "putting off". Because Mr. Lujan had yet to be examined by his doctors, Defendant Marasigan's counsels could not say when he would be available for the continued trial.

That evening, however, Defendant Marasigan's position had changed, and he was simply requesting for a one-week continuance so he could be seen by his doctors in Thailand. The sudden change of request was only explained by Mr. Phillips's statement in his later declaration that Mr. Lujan informed Mr. Phillips that he "will not need nor be operated on while visiting his doctor in Thailand." *See* Decl. at 3, ECF No. 412. No other explanation was provided for the sudden change of request.

30

that "bias for or against an attorney might be so virulent as to amount of bias for or against the party." 600 F.2d 762, 764 (9th Cir. 1979).

Accordingly, the court denies both the Motion to Disqualify and the Motion to Recuse under 28 U.S.C. § 455.

## IV. Conclusion

The motions fail to identify any ground upon which disqualification or recusal would be warranted. As discussed *supra*, the affidavits and declarations are legally insufficient and the motion under section 144 is untimely. The undersigned finds that there is an absence of legitimate reason to recuse or disqualify herself from this case. Additionally, the undersigned finds that there is no legitimate basis to refer the motion to disqualify to a separate judge as discussed above. Therefore, Defendant Marasigan's Motion to Disqualify (ECF No. 449) and Motion to Recuse (ECF No. 457) are **DENIED**.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Apr 19, 2025**